HERMAN H. STICHT & CO., THE HOOLE SERVICE CO. *v.* UNITED STATES (No. 3765) [1]

[1] T. D. 47386.

United States Court of Customs and Patent Appeals, November 13, 1934

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants.
*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Specia l Assistant to the Attorney General, and *Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument October 8, 1934, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Certain imported tachometers were assessed for duty by the collector at the port of New York at $2 each and 45 per centum ad valorem under the provisions contained in paragraph 368 of the Tariff Act of 1922 for—

any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times.

It is the contention of counsel for appellants that the tachometers are not dutiable under the provisions of paragraph 368, *supra*, but are properly dutiable as machines at only 30 per centum ad valorem under paragraph 372 of the Tariff Act of 1922, or, alternatively, as manufactures of metal at 40 per centum ad valorem under paragraph 399 of that act.

The pertinent parts of the paragraphs read, respectively, as follows:

PAR. 368. Clocks and clock movements, including lever clock movements, and clockwork mechanisms, cased, or uncased, whether imported complete or in parts, and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times, * * * if without jewels in the escapement and valued at not over $1.10 each, 35 cents each; valued at more than $1.10 and not more than $2.25 each, 70 cents each; valued at more than $2.25 but not more than $5 each, $1 each; valued at more than $5 but not more than $10 each, $2 each * * *.

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem * * *.

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or

·colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The trial court described the involved devices as—

* * * mechanical devices with a recording dial * * * used to record the average number of revolutions per minute of a shaft or other rotating body, based upon the actual number of revolutions in six seconds. When used with·a rubber disk, which is furnished with each device, it will record the rate of movement of a plane surface. Each tachometer consists of a V-shaped spring which furnishes the power; a train of wheels or gears, through which the power is transmitted; an escapement which permits the release of same; a device which automatically stops the recording of the instrument at the end of a six-second period; and a mathematical device for multiplying by ten the number of revolutions of the object to which the tachometer is applied, in order to determine the number of revolutions per minute.

The record consists of the testimony of several witnesses introduced by the parties, together with appellants' Exhibit I, which is one of the imported tachometers and is representative of those here involved, except that it has a range of 10,000 revolutions per minute, whereas, some of the involved devices have a range of only 1,000 revolutions per minute, and the Government's Exhibit II, which consists of a leaflet, gotten out by the appellant Herman H. Sticht & Co., which, according to the witness Herman H. Sticht, a member of that firm, accurately describes the imported tachometers.

The device is operated by holding its spindle, which protrudes therefrom, against a shaft or other rotating body. The spindle, according to Exhibit II—

* * * is now running with the shaft, but the instrument is not recording.

Press in the push-button and let it fly back. This resets the indicator to zero and winds and starts the chronometer movement.

After 1½ seconds, the spindle is automatically coupled to the counting mechanism, and uncoupled from it after exactly 6 seconds more, when, of course, the hands stop, and you can remove the instrument from the shaft.

. The test has lasted but six seconds, but the scale is calibrated to ten times this value; therefrom you read the revolutions per minute direct.

The small hand marks 1 for every complete revolution of the large hand; or, in other words, one revolution of the small hand corresponds to 10 revolutions of the large hand.

The hands remain at rest at the reading they have reached during the test. You can therefore read the result at your ease. And the hands never need resetting, since this occurs automatically when the push-button is pressed in for the next test.

It now has become clear to you that the Standco eliminates the personal errors that are unavoidable when using a stop-watch and a revolution-counter, to say nothing of taking only a small fraction of the time.

Exhibit II also contains the following statements relative to the involved tachometers:

This Speed Indicator Represents, in a Single Instrument:

1. A revolution counter and a surface-speed indicator.
2. *A chronometer which times the period of test.*

3. Means which *totally* eliminate the personal equation.
Thanks to the combination of these three features, it gives you—
—accurately
—in ten seconds
—by direct reading
—(which remains till reset)
—the R. P. M. of shafts
—the linear speed of surfaces, also of threads and yarns
—all without accessories
—or "timing" of any kind.
(Italics, except for the word "totally," ours.)

Although the witnesses for the importers, two in number, testified that the involved tachometers would not measure time, nor record, indicate, or perform any operation or function at any predetermined time or times, it clearly appears from the testimony introduced by the Government, and from Exhibits I and II that they have, as parts thereof, clockwork mechanisms, intended, among other things, for measuring time, and without which, they could not perform their proper functions.

The trial court held, in an opinion by Dallinger, J., that the involved tachometers contained clockwork mechanisms, and that, therefore, the instruments were dutiable as "clockwork mechanisms" under paragraph 368, *supra*, and, accordingly, overruled the protests. Judgment was entered accordingly.

Thereafter, appellants filed a motion for rehearing, claiming, *inter alia*, that the instruments were not clockwork mechanisms, and that paragraph 368 did not provide for devices containing clockwork mechanisms.

The motion for rehearing was denied, and appellants appealed to this court.

It is contended by counsel for appellants that the involved tachometers are not clockwork mechanisms; that "even the Government witnesses did no more than claim that the tachometer *contains* a clockwork mechanism as one of its parts"; that the clockwork mechanism is not an essential feature of a tachometer, but only an incidental part thereof; and that, therefore, the involved devices do not have an—

essential operating feature intended for measuring time, * * * or similar uses, * * * or for recording, indicating, or performing any operation or function at a predetermined time or times.

It is contended by counsel for the Government that the involved articles have an essential operating feature intended not only for measuring time, but also for "recording, indicating, or performing any operation or function at a predetermined time or times."

We agree with counsel for appellants that the *tachometers* are not "clockwork mechanisms." However, paragraph 368, *supra*, is not limited to clocks, clock movements, and clockwork mechanisms, but

provides for all devices or mechanisms having an *essential* operating feature intended for measuring time, or for the performance of other functions specified in the statute. *United States* v. *Hengerer Co.*, 15 Ct. Cust. Appls. 390, T. D. 42568; *United States* v. *R. W. Cramer & Co.*, 21 C. C. P. A. (Customs) 379, T. D. 46911.

It is clear from the testimony, and Exhibits I and II, that the clockwork mechanisms, or chronometers, as they are called in Exhibit II, are essential to the proper operation of the tachometers. As stated in Exhibit II, the chronometers time the period of the test with such accuracy that no other timing of any kind is necessary.

A "chronometer" is defined in Webster's New International Dictionary as "An instrument for measuring time; a timekeeper * `* *`."

We think it is evident that if the chronometers were removed, the tachometers would be useless for the purposes for which they were designed and used.

We must hold, therefore, that the involved tachometers have an essential operating feature intended for measuring time, and are provided for in paragraph 368, *supra.* Accordingly, we deem it unnecessary to determine whether they have—

an essential operating feature intended for recording, indicating, or performing any operation or function at a predetermined time or times.

For the reasons stated, the judgment is *affirmed.*